**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------X

In Re:

BRUCE E. GARDNER and                                    Chapter 13
PHYLLIS GARDNER

                                                        Case No. 15-15192 (MBK)


                            Debtors.

-------------------------------------------------------X
**APPEARANCES:**

William H. Oliver, Jr., Esq.
William H. Oliver, Jr. and Associates
Brandywine Commons
2240 Highway 33, Suite 112
PO Box 667
Neptune, NJ 07753
Attorney for the Debtors

Brian W. Hofmeister, Esq.
Law Firm of Brian W. Hofmeister
691 State Highway 33
Trenton, NJ 08619
Attorneys for ETC 35 LLP, William J. Kohlhepp, Jr., Esq.,
Frank Cocuzza, Sr., Richard Fullam, David Kurlander,
All County Title & Abstract, Russell Bissionett,
Joseph Butacavoli, Guy Cunningham, and Frank Cocuzza, Jr.

───────────────────────────────────────────────────────


**MICHAEL B. KAPLAN, U.S.B.J.**


**MEMORANDUM DECISION**

## I. INTRODUCTION

This matter comes before the Court upon the Motion for Damages, Costs, Attorney's Fees and Sanctions for Violation of the Automatic Stay ("Motion") filed on behalf of Bruce and Phyllis Gardner (collectively "Debtors") and against ETC 35 LLP ("ETC") and its individual partners; William J. Kohlhepp, Jr., Esq., Frank Cocuzza, Sr., Richard Fullam, David Kurlander, All County Title & Abstract, Russell Bissionett, Joseph Butacavoli, Guy Cunningham and Frank Cocuzza, Jr. (collectively "Respondents"). ETC responded to the Debtors' Motion by filing an Objection and a Certification in Opposition. Debtors subsequently filed an Amended Brief and supplemental documents in support of the Motion. The Court heard oral argument on February 23, 2016, and issues the following ruling:

## II. JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

## III. FACTS

The following constitutes the Court's findings of fact and conclusions of law as required under Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### A.     Procedural History

1. In November of 2013, ETC obtained a judgment against the Debtors in the amount of $11,982.54 in the Ocean County Superior Court of New Jersey ("State Court").

2. On November 12, 2013, ETC secured a Writ of Execution against the Debtors.

3. On February 9, 2015, William J. Kohlhepp, Jr., Esq. ("Kohlhepp"), acting as the attorney for ETC, caused the Burlington County Court Officer, John McKernan, to levy on the Debtors' PNC Bank account to satisfy the antecedent judgment.[2]

4. It is undisputed that the funds in the account of the subject levy represented the proceeds from a prior settlement of a workers' compensation suit brought by the Debtors.

5. On March 10, 2015, ETC filed a Motion for Turnover of the levied funds in State Court.

6. On March 24, 2015, the Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code. The case was subsequently converted to a Chapter 13 bankruptcy proceeding on May 29, 2015.

7. On March 26, 2015, Debtors' attorney, William H. Oliver, Jr. ("Oliver"), sent correspondence to the PNC Bank Garnishment Processing Department, alerting them to the recently filed bankruptcy and directing them to take no further action as a result of the automatic stay protections of 11 U.S.C. § 362.

8. On March 30, 2015, the State Court entered an order ("Turnover Over") directing the turnover of the levied funds.[3]

---

[2] While the judgment was obtained in Ocean County, Debtors' PNC Bank account was located in Burlington County.

Case 15-15192-MBK    Doc 44    Filed 03/31/16    Entered 03/31/16 15:49:26    Desc Main
                            Document      Page 4 of 20

9. On April 21, 2015, Oliver sent a letter to Kohlhepp regarding the Debtors' bankruptcy filing and its impact on the respective rights of the parties.

10. On April 22, 2015, Kohlhepp responded to Oliver with his own letter, which stated that the funds had been properly levied, the Motion for Turnover was appropriate and that under his reading of *In re Flores*[4], which Kohlhepp included with this letter, the Debtors no longer had any rights to the levied funds. Kohlhepp's letter was also sent to Carolyn Zender at PNC Bank and John McKernan, Court Officer for Burlington County.

11. Upon receipt of this letter, Oliver called Kohlhepp to reiterate that the bankruptcy stay was in effect and that the funds had been improperly levied, explaining that the funds were exempt under New Jersey state law as workers' compensation proceeds. Notwithstanding this conversation, the status quo continued.

12. On May 15, 2015, the Court Officer released the levied funds to Kohlhepp.

13. On May 21, 2015, Oliver filed a Motion for Reconsideration of the State Court's Turnover Order.

14. On May 30, 2015, Kohlhepp personally delivered a check in the amount of $10,000.00 to his partners in ETC, representing the levied funds, less his share as a partner and attorney for the LLP.

15. On June 1, 2015, ETC filed Opposition to the Debtors' Motion for Reconsideration of the Turnover Order.[5]

---

[3] At this juncture, neither the State Court nor ETC were aware of the Debtors' bankruptcy. Notwithstanding, as discussed *infra*, the continued prosecution of the Motion for Turnover and the entry of the Turnover Order violated the automatic stay under 11 U.S.C. § 362 (a).

[4] *In re Flores*, Case No. 10-34546(DHS), 2011 WL 44910 (Bankr. D.N.J. Jan. 6, 2011).

[5] Neither party moved before the Bankruptcy Court for relief from the automatic stay prior to filing these pleadings in the State Court, as required under *Ass'n. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3d. Cir. 1982).

16. On July 20, 2015, Oliver sent a letter to Kohlhepp advising that if ETC continued to litigate the matter, the Debtors would seek attorney's fees, sanctions and costs based on ETC's violation of the automatic stay.

17. On July 22, 2015, The State Court vacated the Turnover Order and instructed ETC to return the levied funds to the Debtors within 14 days.

18. Rather than comply with the Court's directive, ETC instead filed a Motion for Reconsideration of the State Court's Order Vacating the Turnover Order, once again doing so without securing relief from the automatic stay.

19. On September 11, 2015, the State Court denied ETC's Motion for Reconsideration and again ordered ETC to relinquish the funds to Oliver's trust account. The Honorable Judge James W. Palmer, Jr. indicated in his decision that he would never have ordered the turnover of levied funds if he had been aware initially of the pending bankruptcy.

20. On September 21, 2015, Oliver again wrote to Kohlhepp, attaching a copy of the State Court decision vacating the Turnover Order, as well as reminding Kohlhepp that he was in violation of the stay and his continued failure to return the levied funds would result in more fees, sanctions and costs.

21. On November 2, 2015, Oliver wrote to Kohlhepp once more detailing each of the previous letters he had sent regarding the matter, as well as Kohlhepp's stay violations and failure to comply with Judge Palmer's orders. Oliver further admonished that ETC's continued disregard of the automatic stay and State Court orders would only result in more fees and sanctions against Kohlhepp.

22. On December 22, 2015, Oliver again wrote to Kohlhepp to alert him to the intended filing of the within Motion and to provide him with a copy of same.

23. The Court entertained oral argument on February 23, 2015, and opened the record for 21 additional days to allow Respondents to respond to the Debtors' request for the imposition of joint and several liability for each of the Respondents. No pleadings were filed during this period.

### B. ETC 35, LLP Status

24. On October 17, 2002, ETC 35, LLP was formed as a New Jersey Domestic Limited Liability Partnership.

25. Kohlhepp was listed as the registered agent, as well as an officer/director along with Frank Cocuzza, Sr., Richard Fullam and David Kurlander. The other non-officer/directors, listed in an Addendum to the Certificate of Registration, were All County Title & Abstract, Russell Bissionett, Joseph Butacavoli, Guy Cunningham and Frank Cocuzza, Jr.

26. According to the Certificate of Registration, ETC's purpose for formation was, "The purchase and sale of real estate."

27. On December 31, 2013, ETC's status as a limited liability partnership was cancelled based on their filing of a Certificate Relative to Withdrawal with the New Jersey Department of the Treasury. According to ETC's filing, the stated reason for cancelling its status as a limited liability partnership was simply, "Business ending 12/31/13."

## IV. Discussion

### A. Property of the Estate

The initial inquiry that the Court must undertake is whether the funds levied by ETC were property of the bankruptcy estate at the time of the alleged violation(s) of the automatic stay. ETC and its counsel, Kohlhepp, relied on Judge Steckroth's decision in

6

*In re Flores*[6] for its contention that the Debtor ceded its interest in the funds when the Writ of Execution was delivered to the Court Officer on August 11, 2014, and thus they were not property of the bankruptcy estate at the time of filing, nor subject to the automatic stay. As discussed below, such reliance was imprudent. *In re Flores* simply stands for the unremarkable proposition that a debtor is not divested of an interest in levied funds until after the entry of a turnover order. *In re Flores*, No. 10-34546(DHS), 2011 WL 44910 (Bankr. D.N.J. Jan. 6, 2011). Here, in the absence of a turnover order, the levied funds were property of the bankruptcy estate upon the bankruptcy filing. At best, ETC was a secured creditor, entitled to adequate protection; yet, even this status is in doubt given that the funds represented exempt proceeds of a workers' compensation award, pursuant to N.J.S.A. 34:15-29.

Section 362 of the Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay that protects the debtor and property of the estate. *See* 11 U.S.C. § 362(a). The Third Circuit Court of Appeals has acknowledged that the scope of the automatic stay is broad. *In re Fannie Askew*, 312 B.R. 274, 280 (Bankr.D.N.J. 2004)(citing *Maritime Elec. Co. v. United Jersey Bank*, 595 F.2d 1194, 1203 (3d. Cir. 1991)). Despite its wide-reaching nature, the automatic stay applies only to property of the debtor's bankruptcy estate. *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693, 696 (3d Cir. 1989). The Bankruptcy Code provides that "all legal and equitable interests of the debtor in the property as of the commencement of the case…" will be considered part of the estate. 11 U.S.C. § 541.

State law is employed by bankruptcy courts to determine what legal or equitable interest a debtor may have in specific property. *Butner v. United States*, 440 U.S. 48, 54,

---

[6] *In re Flores*, Case No. 10-34546(DHS), 2011 WL 44910 (Bankr. D.N.J. Jan. 6, 2011).

7

Case 15-15192-MBK    Doc 44    Filed 03/31/16    Entered 03/31/16 15:49:26    Desc Main
              Document      Page 8 of 20

99 S. Ct. 914 (1979). New Jersey law dictates that a levy on the debtor's property divests the debtor of control of that property, placing it "under the dominion of a court officer." *Sylvan Equipment Rental Corp. v. C. Washington & Son, Inc.*, 292 N.J. Super. 568, 573-74, 679 A.2d 213, 216 (Law Div. 1995). A judgment lien is perfected when the personal property of the debtor is levied upon. *In re Blease*, 605 F.2d 97 (3d Cir. 1979) (citing *Vineland Sav. & Loan Ass'n v. Felmey*, 12 N.J. Super. 384, 393 (Ch.Div. 1950)). Therefore, the levying creditor has a legal interest in the subject property relating back to the date of delivery of the writ of execution to the court officer. *In re Ramco Am. Int'l, Inc.*, 754 F.2d 130, 132 (3d Cir. 1985).

Courts conduct turnover proceedings in order determine priorities amongst creditors and to ensure that the holder of those funds distribute them to the proper creditor. *In re Flores*, No. 10-34546(DHS), 2011 WL 44910, *3 (Bankr. D.N.J. Jan. 6, 2011) (citing N.J.S.A. 2A:17-63; *Sylvan*, 292 N.J. Super. at 571.) The turnover proceeding represents the courts final determination as to the debtor's interest in the property, as well as allowing all parties a final opportunity to be heard regarding the disposition of the property interest. *In re Paul*, No. 12-cv-07855(FLW), No. 11-31653(RTL), 2013 WL 3446994, *4 (D.N.J. July 9, 2013) (citing *In re Flores*, No. 10-34546(DHS), 2011 WL 44910, *3 (Bankr. D.N.J. Jan. 6, 2011)) (citing *Sylan*, 292 N.J. Super at 573). Therefore, once the turnover order is entered, the debtor is divested of his interest in the property, as that interest now belongs solely with the levying creditor. *In re Flores*, No. 10-34546(DHS), 2011 WL 44910, *3 (Bankr. D.N.J. Jan. 6, 2011).

As in *In re Flores*, which Kohlhepp sent to Oliver upon being noticed of the bankruptcy filing, it is important to pay attention to the procedural dates leading up to the Turnover Order. ETC became a perfected lien holder when it obtained a levy on the

Debtors' PNC Bank account on February 9, 2015. While ETC held an alleged secured interest in the property at this time, it was not until March 30, 2015, with entry of the Turnover Order, that the Debtors were totally divested of an interest in the funds. However, as a result of the bankruptcy filing on March 26, 2015, the automatic stay was in place and the entry of the Turnover Order was void *ab initio*. *In re Hawk*, 314 B.R. 312 (Bankr.D.N.J. 2004).

As noted *supra*, ETC's status as a perfected lien holder was vacated as a result of the State Court's July 22, 2015 Order, vacating its prior order authorizing turnover of the levied funds. The State Court took such action in light of both the bankruptcy filing and the nature of the levied funds as exempt proceeds of a workers' compensation award.

### B.    Obligation to Stop Pursuing Judicial Action

As previously discussed, the filing of a bankruptcy petition operates as an immediate stay against any of the activities enumerated in § 362(a) and not excepted by § 362(b). 11 U.S.C. §§ 362(a) and (b). Specifically, the Bankruptcy Code provides that:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title… operates as a stay, applicable to all entities of-
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title…

11 U.S.C. § 362(a)(1). Indeed, the automatic stay is a fundamental protection for debtors under the code, providing "the debtor a breathing spell from his [or her] creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *In re Cruz*, 2006 Bankr. LEXIS 4125, *4 (Bankr. D.N.J. July 26, 2006).

9

Consistent with the intended breath of the automatic stay, "[a]ll proceedings are stayed, including… judicial proceedings." *Ass'n. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3d Cir. 1982). "Because the automatic stay serves both debtors and creditors, it may not be waived and its scope may not be limited by a debtor." *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1203 (3d Cir. 1991) (citing *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 575, 577 (7th Cir. 1989)). The stay is triggered once the bankruptcy petition is filed and is automatically enforceable against creditors, regardless of whether they have yet been made aware of the petition. *Maritime Elec. Co.*, 959 F.2d at 1203. Without the leave of the bankruptcy court by way of stay relief, no creditor or party in interest may proceed against the debtor in any judicial action. *Id.* "[The] determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs," but instead the court must look to the commencement of the action and whether the proceeding was "originally brought against the debtor." *Ass'n. of St. Croix Condominium Owners*, 682 F.2d at 448-449.

In the present case, it is apparent that the State Court proceeding *was brought against the Debtors* for collection of a previously determined judgment. From the moment that ETC received notice of the Debtors' bankruptcy filing, via Oliver's April 21, 2015 letter, the partnership had an affirmative duty to prevent violations of the automatic stay. *In re Myers*, 491 F.3d 120 (3d Cir. 2007) (citing *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 978 (1st Cir. 1997). Instead, Kohlhepp wrote back to Oliver on behalf of ETC, disputing the applicability of the automatic stay, and incorrectly citing to *In re Flores*. Mr. Kohlhepp is not a bankruptcy practitioner; notwithstanding, his first course of action should have been to seek clarity and guidance

10

from this Court. Oliver responded to this correspondence by calling Kohlhepp to reiterate that the stay was in effect, yet Kohlhepp did not deviate from his position that the Debtors no longer had an interest in the funds and therefore the stay did not apply. Mr. Kohlhepp's adherence to this misguided reading of *In re Flores* will turn out costly, for his continued pursuit of judicial action in the State Court constitutes a clear violation of the automatic stay. The Court now turns to the Respondents' specific stay violations.

### C.     Actions in Violation of the Automatic Stay

The presence of the automatic stay stands to protect the estate and provide a debtor with an opportunity to proceed with his or her bankruptcy case with some distance between themselves and their creditors. All parties have an affirmative duty to not act in violation of the automatic stay once the debtor's bankruptcy petition has been filed. *In re Myers*, 491 F.3d at 127. Failure to comply with § 362 of the Bankruptcy Code may result in judicial consequences for the stay violator. 11 U.S.C. § 362(k)(1).

Section 362(a) of the Bankruptcy Code provides that the automatic stay is triggered once a bankruptcy petition is filed and outlines specific actions that will violate the stay. 11 U.S.C. § 362(a). Of particular significance to the present case, the stay is violated when, *inter alia*, a party continues to pursue a judicial proceeding against a debtor that was commenced before the bankruptcy filing, as well as continuing to obtain property of the estate or exercising control over the estate's property. 11 U.S.C. §§ 362(a)(1) and (3).

As indicated earlier, ETC had an obligation to place its pursuit of the Debtors' levied funds on hold until obtaining relief from the automatic stay. A creditor must take affirmative acts to avoid committing stay violations, which is counter to how ETC chose to proceed. *Frankel v. Strayer*, 391 B.R. 266, 272 (Bankr. M.D. Pa. 2008) (quoting *In re*

11

*Glanzer*, 2008 WL 938590, *3 (Bankr. N.D. Ohio) (citing *In re Roberts*, 175 B.R. 339, 343 (9th Cir. BAP 1994)). Indeed, although ETC had an affirmative duty to ensure it was not acting in violation of the stay, it inexplicably exhibited a callous disregard of the Debtors' bankruptcy filing, and gambled as to whether it was in violation of the stay. *In re Myers*, 491 F.3d at 127. Failure to stop the turnover proceeding was a violation of § 362(a)(1), as were actions taken in continuance of the State Court proceeding. Specifically, ETC's filing of opposition to the Debtors' Motion for Reconsideration of the Turnover Order[7], and then later moving for reconsideration of the State Court's Order Vacating the Turnover Order, both violated the automatic stay.

Section 362(a)(3) provides that the stay operates to enjoin any party's attempt "to obtain possession of property of the estate… or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). While ETC violated the stay by not taking measures to halt the turnover proceeding, it violated further the stay by refusing to return the levied funds. On May 15, 2015, when the Court Officer released the levied funds to Kohlhepp, Kohlhepp had the opportunity mitigate any harm caused by having continued with the turnover motion and demonstrate a measure of respect for the potential applicability of the stay. Rather, Kohlhepp immediately chose to distribute the funds to the other members of ETC, after taking his own share of the levied funds as both a partner and the LLP's attorney. Both the retention of the levied funds from the Court Officer and the distribution of those funds were acts in violation of the stay, as Kohlhepp had taken possession improperly of estate property and exercised control over that property by dispensing it to the partners.

---

[7] As discussed earlier, the Debtors' Motion for Reconsideration of the Turnover Order in the State Court was filed in violation of the automatic stay as well, as the Debtors never moved for stay relief before the Bankruptcy Court, and the stay is in place to protect not only the debtors, but also creditors. *Ass'n. of St. Croix Condominium Owners*, 682 F.2d at 448.

12

Respondents remain in violation of the stay as they have failed to return the levied funds despite receiving numerous letters from Oliver detailing how continued failed compliance with the stay may result in the assessment of fees, costs and sanctions against the partnership. Further, the State Court has vacated its original decision ordering the turnover of the funds and ordered ETC to return the funds. Again, there has been no compliance. Curiously, Kohlhepp has stated in his Certification of Opposition filed with this Court that, "[a]t this point, all the partners are in agreement to turn over the funds that were released," yet the funds have not been returned, and the stay violations continue as of this writing.

### D. Damages for Willful Violation of the Stay

A debtor who is injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). A "willful" violation of the stay entails a creditor with knowledge of the debtor's bankruptcy filing committing an intentional act in violation of the stay. *Krystal Cadillac-Oldsmobile GMC Truck Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003). A creditor's intent to violate the stay is not required for willfulness, but rather that the creditor intended to act in the way that is then determined to be in violation of the stay. *In re University Medical Center*, 973 F.2d 1065 (3d Cir. 1992).

ETC's knowledge of the bankruptcy filing is evidenced by Kohlhepp's response to Oliver's April 21, 2015 correspondence. ETC took possession of the levied funds under the ill-advised assumption that it was the rightful owner of the funds and Kohlhepp treated them as such, by distributing the funds to his partners. Kohlhepp's conduct is best described as an intentional and callous act of defiance, with a reckless disregard of the

13

consequences. *Frankel v. Strayer*, 391 B.R. at 275. ETC's own motion for reconsideration of the State Court's order vacating the Turnover Order and its continuing failure to return the levied funds to the Debtors exhibit blatant disregard for the Debtors' rights, taken with full knowledge of Judge Palmer's admonition that he would not have ordered the turnover in the first place due to the bankruptcy filing.  Whether these violations are examined individually or collectively, it is clear that Respondents acted willfully in their violations of the automatic stay.

When confronted with willful violations to the automatic stay, a court has the power to provide the wronged party with both actual and punitive damages.  11 U.S.C. 362(k)(1).

### (i).    Actual Damages

Based on ETC's willful violation of the automatic stay, the Debtors were forced to redress their rights through litigation before this Court. As a result, the Debtors have incurred significant expense in the form of attorney's fees and costs.  As explained in *Frankel v. Strayer*, courts have found that actual damages in the form of attorney's fees are essentially a natural result of a party violating the automatic stay:

> "[E]ven innocent and well-grounded violations of the automatic stay should give rise to recovery of attorneys' fees when a debtor is required to resort to a court action to vindicate rights." *In re McNeil*, 128 B.R. 603, 614 (Bankr. E.D. Pa. 1991)(internal citation omitted.)  Some Courts have required the payment of attorney's fees and costs for a creditor's willful violation of the automatic stay even if the debtor suffered no other compensable harm. *In re Heidkamp*, 334 B.R. 713 (Bankr. M.D. Fla. 2005).

391 B.R. 266, 272 (Bankr. M.D. Pa. 2008).  Beyond attorney's fees, a party found to be in willful violation of the automatic stay may recover actual damages.  11 U.S.C. § 362(k)(1).  An award of actual damages includes attorney's fees and requires "concrete evidence supporting the award of a definite amount" that can be ascertained with

14

"reasonable certainty," and cannot be based on speculation. *Frankel v. Strayer*, 391 B.R. at 272; Doe v. United States, 976 F.2d 1071, 1085 (7th Cir. 1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed2d 28 (1993); *In re Heghmann*, 316 B.R. 395, 405 (1st Cir. BAP 2004) (citing *Adams Apple Distrib. Co. v. Papeleras Reunidas, S.A.*, 773 F.2d 925, 930 (7th Cir. 1985)).

Having determined that the Debtors are entitled to attorney's fees, the Court must determine whether the requested fees are reasonable. *In re Rodriguez*, No. 07-24687(MBK), 2012 WL 589553, *5 (D.N.J. Feb. 22, 2012) (citing *In re Miller*, *supra*, 447 B.R. 426, 434 (Bankr. E.D. Pa. 2011)) ("For Debtors to recover attorney's fees, however, such fees must be reasonable and necessary"). Thus, the reasonableness standard tempers the policy to discourage willful stay violations. *In re Rodriguez*, No. 07-24687(MBK), 2012 WL 589553, *5 (D.N.J. Feb. 22, 2012). At oral argument, counsel for Respondents voiced his displeasure with the amount of hours billed by the Debtors' counsel; nevertheless, no formal objection to the request has been filed. Notwithstanding, the Court has undertaken a comprehensive review of the charges incurred and regards the requested fees to be reasonable in light of the substantial work performed in this case[8]. All of the time expended by counsel in both this case and the State Court was necessary to secure the Debtors' rights and address Kohlhepp's flawed understanding of certain basic precepts of bankruptcy law.

**(ii).    Punitive Damages**

"[P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the

---

[8] Debtors have elected to waive compensatory damages, and limit their request to attorney's fees and costs, the return of the levied funds to the Debtors and punitive damages for the willful violation of the stay. Debtors have requested fees from the date Kohlhepp received notice of the Debtors' bankruptcy, April 21, 2015, through the conclusion of this current litigation.

15

defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so." *Frankel v. Strayer*, 391 B.R. at 275; *In re Wagner*, 74 B.R. 898, 903-04 (Bankr. E.D. Pa. 1987) (quoting *Cochetti v. Desmond*, 572 F.2d 102 (3d Cir. 1978)) (internal citations omitted); *In re Patterson*, 263 B.R. 82, 97 (Bankr. E.D. Pa. 2001). When a party acts in "arrogant defiance" of the Bankruptcy Code, punitive damages are particularly merited. *Id.* (citing *In re Medlin*, 201 B.R. 188 (Bankr. E.D. Tenn. 1996)).

The bankruptcy court has the discretion to determine whether to impose punitive damages in "appropriate circumstances." *In re Lightfoot*, 399 B.R. 141, 145-146 (Bankr. E.D. Pa. 2008). When making this determination, the court is to consider (1) the nature of the respondent's conduct; (2) the respondent's ability to pay; (3) the respondent's motives; and (4) any provocation by the debtor.[9] *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 487 (E.D. Pa. 1989); *In re Wagner*, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987).

In this Court's view, Respondents' conduct has been so egregious, that punitive damages are warranted. Respondents have remained in violation of the stay for nearly a year, acting in defiance of this Court's authority, as well as an order of the State Court. "Reckless disregard" is essentially the perfect description for the nature of Kohlhepp's

---

[9] As set forth below, the Court focuses its analysis on the nature of Respondents' conduct. The Court notes that Respondents have never suggested an inability to pay or otherwise return the funds at issue. Further, the Court is satisfied that neither the Debtors nor their counsel provoked Respondents; rather, as discussed *infra*, it was the Respondents who provoked the Debtors through their continued disregard of the automatic stay. The Court is equally convinced that while Respondents' initial motives may have been the result of flawed legal analyses, Respondents' conduct, particularly following the State Court's rescission of the Turnover Order, demonstrates that their motives morphed into something much more egregious. Indeed, Respondents' continue to hold the funds as some sort of ransom in order to coerce the Debtors into a settlement. The Court will not condone such conduct.

conduct since learning of the bankruptcy; on his behalf, as well as the other Respondents, Kohlhepp refused to acknowledge the automatic stay's application and thoughtlessly acted without concern for the potential repercussions. Through countless communications, Debtors' counsel implored Kohlhepp to revisit his position, without court intervention; unfortunately, Respondents have remained steadfast in their refusal to yield any ground by releasing the funds. Indeed, the Court is at a loss to understand why in the many months since it has become clear that *In re Flores* offers no safe haven, Respondents have not mitigated the harm by returning the levied funds. Put simply, this Court views the imposition of punitive damages as a necessary and appropriate response to Respondents' continuous conduct.

### E. Liability of Partners

Under New Jersey law, limited liability partnerships are governed by the Uniform Partnership Act Section 42:1A-18. This section provides that "all partners are liable jointly and severally for all obligations of the partnership…" unless an exception is met by subsection b. or c. of the statute. N.J.S.A. § 42:1A-18. While subsection b. is not relevant to the matter at hand, subsection c. speaks to the liability of an LLP:

> An obligation of a partnership incurred while the partnership is a limited liability partnership, whether arising in contract, tort, or otherwise, is solely the obligation of the partnership. A partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for such an obligation solely by reason of being or so acting as a partner…"

N.J.S.A. § 42:1A-18(b) and (c).

The status of an LLP, which protects the partners from individual liability, remains effective unless the LLP itself cancels its status. *Mortgage Grader Inc. v. Ward & Olivo, L.L.P.*, 438 N.J. Super. 2002, 102 A.3d 1226 (App. Div. 2014) (citing N.J.S.A. § 42:1A-6d). An examination of ETC's official documents that were filed with the New

Jersey State Depart of the Treasury reveals that ETC 35 LLP was founded on October 17, 2002, with the stated purpose of purchasing and selling real estate. Those documents further provide that William J. Kohlhepp Jr. is the registered agent for the LLP, as well as providing the names of the other partners. Among the documents that had been filed with the New Jersey Department of the Treasury and since provided to the Court is a Certificate of Withdrawal of a Limited Liability Partnership. This filing provides that ETC 35 LLP withdrew as a limited liability partnership and its existence was terminated on December 31, 2013. ETC's Certificate of Withdrawal includes a section which allows for a notation of the reason for withdrawal, stating "Business ending 12/31/13." Also included in the record before the Court is a Corporate Status Report, dated December 14, 2015, which indicates that ETC 35 LLP was cancelled as of December 31, 2013. Despite the evidence provided in these official documents, Kohlhepp inexplicably states in his Certification that ETC ceased operating in July of 2015. Now, it may be that ETC continued operating until July, 2015, however New Jersey law dictates that it did so without the umbrella of limited liability protections afforded under N.J.S.A. § 421A-18c, because the LLP was formally cancelled with the Department of the Treasury. "Without LLP status, 'all partners are liable jointly and severally for all obligations of the partnership…'" *Mortgage Grader Inc.*, 438 N.J. Super at 210 (citing N.J.S.A. 42-1A-18a). As a result, the partners of ETC are joint and severally liable for the damages imposed hereafter. [10]

---

[10] The Court finds that Kohlhepp will be liable both as a member of the partnership, as well as its agent/attorney. "Courts have imposed joint and several liability against creditors and their counsel for willful stay violations." *In re Johnson*, 253 B.R. 857, 861 (Bankr. S.D.Ohio 2000) (citing *In re Baker*, 183 B.R. 30, 33 (Bankr. D.R.I. 1995)).

### F. Imposition of Damages

Having determined that Respondents have committed willful stay violations and the members of the former LLP are jointly and severally liable, the Court is now prepared to assess damages.

Firstly, ETC must comply with the State Court Order Vacating the June 22nd Turnover Order and return to the Debtors the levied funds, $11,565.59, with interest thereon, from the petition date forward at the federal judgment rate.

Secondly, actual damages in the form of attorney's fees and costs are to be paid to Debtors' counsel. The Court has reviewed Mr. Oliver's Second Supplemental Certification in Support of Attorney's Fees and Damages for Violation of the Automatic Stay, and has concluded that the requested fees of $21,730.00 are reasonable and appropriate in light of the work performed in this case.

Finally, the Court has determined that Respondents will be liable for punitive damages as a result of their conduct. The Supreme Court of the United States has provided that, "… courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003). When considering the acceptable limits of a punitive award, the Supreme Court has employed a comparative ratio of punitive to compensatory damages and further stated, "[w]hile these ratios are not binding, they are instructive. They demonstrate what should be obvious: Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution..." *Campbell*, 538 U.S. at 425. With this guidance in mind, this Court is prepared to issue punitive damages of five times the general damages suffered by the Debtors, apart from court fees. The

19

$11,565.59 that was turned over improperly represents the amount subject to the multiple of five, resulting in an award of $57,827.95 in punitive damages.[11]

## V.    Conclusion

For the foregoing reasons, this Court: (i) finds that the funds levied from the Debtors' PNC Bank account were property of the estate, (ii) that ETC was subject to the stay and had an affirmative obligation to stop further judicial action, including the turnover of the levied funds, (iii) that Respondents have willfully violated the stay by seeking additional relief in the State Court and by continuing to retain the levied funds, (iv) that Kohlhepp and his partners in ETC are joint and severally liable, (v) directs that the $11,565.59 improperly levied and removed from the Debtors' PNC Bank account be returned to the Debtors within 30 days of this ruling  and (vi) awards attorney's fees in the amount of  $21,730.00 and punitive damages in the amount of $57,827.95 to be paid to the trust account of Debtors' counsel within 30 days of the entry of this ruling. Debtors' counsel is directed to submit an order consistent with this ruling.

Dated: March 31, 2016

*[signature]*

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[11] The Court notes that while it could have applied the multiplier to the total of the damages, which includes $21,730.00 in attorney's fees, the Court deems the award given today as sufficient to achieve the stated goals of due process, deterrence and retribution.